ERNEST S. KLAPPENBACH AND JANET M. KLAPPENBACH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klappenbach v. Commissioner
Docket No. 13023-78.
United States Tax Court
T.C. Memo 1986-427; 1986 Tax Ct. Memo LEXIS 175; 52 T.C.M. (CCH) 437; T.C.M. (RIA) 86427; September 11, 1986. Ernest S. Klappenbach, pro se. Osmun R. Latrobe, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $2,008.08 in petitioners' income tax for 1972. The sole issue for decision is whether petitioners are entitled to a charitable contribution deduction under section 170 [1] for a payment made to a retirement home. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioners, Ernest S. and Janet M. Klappenbach, *176 resided in Tulsa, Oklahoma at the time the petition herein was filed. Ernest Klappenbach ("petitioner") is an author and during 1972 worked for an oil and gas trade magazine. In 1972, petitioner began to search for a retirement home for his mother, who was then living alone in Chicago. Petitioner looked at approximately twenty facilities, one of which was University Village (the "Village"), an Oklahoma corporation sponsored by and affiliated with Oral Roberts. The Village at that time was constructing a facility in Tulsa and had completed the first phase of its residential units. The Village offered a wide variety of living arrangements and accommodations including cottages; large and small apartments, with or without kitchens; an infirmary; recreational and social facilities; and a community dining hall. Residents at the Village paid a monthly service charge that covered current operating costs, including meals, housekeeping, and transportation. Construction of the buildings was financed with borrowed funds, but they were ultimately paid for with "sponsorship gifts" or "donations." These gifts were solicited from residents and prospective residents as well as their relatives *177 and friends. The amounts solicited depended upon the size and type of unit selected by the resident. In 1972 the sponsorship gift solicited for an apartment with one bedroom and no kitchen was $15,500. A resident was not required to make a sponsorship gift. However, if they did not, the Village would "endeavor" to find a sponsor for them. As of March 1975, the Village had housed a total of 455 residents, including the then current occupants and 19 residents who had moved out. Of all the residents admitted to the Village, 63 had made no sponsorship gift or a gift of less than the suggested amount, but 16 residents had made a gift of greater than the suggested amount. Of the 19 residents who moved out prior to March 1975, 12 received either a full or partial refund of their sponsorship gift. Petitioner chose the Village as a retirement home for his mother after meeting with two of the Village's representatives. During these meetings sponsorship gifts were discussed and petitioner was given literature about such gifts. Subsequently, petitioner's mother applied for admission to the Village, and in July 1972 her application was accepted. In September 1972, she moved into a Village *178 apartment which had one bedroom and no kitchen. At about the same time that petitioner's mother moved to the Village, she gave him a check in the amount of $10,500. The check was drawn on a trust account which had been established by petitioner's father during his lifetime for the support of petitioner's mother during her lifetime, with the remainder going to petitioner and his sister. Petitioner deposited the $10,500 check in his personal account and on October 10, 1972, gave the Village a check on his account for $10,500, which was designated as representing a $5,500 sponsorship gift from petitioner and a $5,000 sponsorship gift from petitioner's sister. On the same day, the mother at petitioner's request executed another check on her trust account in the amount of $5,000 which was payable to the Village and represented the balance of the $15,500 in sponsorship gifts which had been suggested by the Villages' representatives for the mother's apartment. Petitioner's mother lived in the apartment until she became ill approximately five months later. At that time she was moved to the infirmary, where she stayed until her death one year later. On the 1972 return, petitioner *179 claimed a deduction of $5,500 for a charitable contribution to the Village. In his notice of deficiency, respondent determined that petitioner's payment of the $5,500 to the Village did not qualify for deduction as a charitable contribution under section 170. In years prior to and subsequent to 1982, petitioner's charitable contributions averaged about $500 to $700 per year, with his highest being $1,000. OPINION Section 170 allows a deduction for charitable contributions, which the statute defines as gifts made to a specified class of organizations. In this case the parties agree that the Village is qualified to receive charitable contributions under section 170. They disagree, however, as to whether the disputed transfer constituted a gift. Although different tests have been applied in determining whether a given transfer qualifies as a contribution under section 170, [see under , affd. , cert. denied , in this case we must apply the test used by the Tenth *180 Circuit Court of Appeals, in . There the court, citing , stated that "a gift is a voluntary transfer of property without consideration, and * * * if a payment or transfer of other thing of value is made in anticipation of a benefit other than the personal satisfaction of having performed the act of generosity, the transaction is not a gift." . From the record as a whole we are satisfied that the $5,500 paid by petitioner to the Village was not a gift but more in the nature of rent for his mother's use of the apartment. Under the surrounding circumstances the payment cannot be viewed as a voluntary and gratuitous contribution motivated by the satisfaction which would flow from the performance of a generous act. Instead, it was induced by the benefits which petitioner had been led to believe he and his mother would derive from her having a place in which to live and be taken care of for the rest of her life. Consequently, under the rule laid down in Dowell the transfer did not constitute a gift by petitioner. We *181 recognize that in Dowell the court allowed a charitable contribution on facts somewhat similar to those here. In Dowell, however, the court stressed that it was considering only the particular donor and the circumstances involved in that case. . Moreover, the court noted that it was bound by the trial court's conclusion that there the donor intended to make a gift. This case involves a different taxpayer and a different set of circumstances from which we have concluded that the taxpayer did not intend to make a gift. Consequently while we agree with and adopt the reasoning used in Dowell it leads us to a different conclusion on the facts before us. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended during the year in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure.↩